UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * * * | |
| v. | * * | |
| KEVIN L. JOHNSON, | * * | Criminal Action No. 23-cr-10043-ADB |
| Defendant. | * * * * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Defendant Kevin Johnson is charged in a one-count indictment with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). [ECF No. 1 at 1 ("Indictment")]. He has moved for dismissal, arguing that § 922(g)(1) is unconstitutional, both on its face and as applied to him, in light of the Supreme Court's decision in N.Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022). For the reasons set forth below, the motion, [ECF No. 36 ("Mot.")], is DENIED.

**I.    BACKGROUND**

Between 2005 and 2012, Johnson was convicted of three separate felonies: (1) possession of a firearm without a firearm identification ("FID") card in 2005, in violation of Mass. Gen. Laws ch. 269, § 10(a)(2); (2) felon in possession of a firearm and ammunition in 2007, in violation of 18 U.S.C. § 922(g)(1); and (3) felon in possession of a firearm and ammunition in 2012, again in violation of 18 U.S.C. § 922(g)(1). [Mot. at 4].

1

On February 22, 2023, while on supervised release for his 2007 conviction, [ECF No. 27 at 2], Johnson was indicted on a fourth charge of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1), [Indictment at 1].

On November 1, 2023, Johnson moved to dismiss the Indictment as unconstitutional in light of Bruen. [Mot.]. The Government opposed on November 15, 2023. [ECF No. 37].

## II.  LEGAL STANDARD

A defendant may seek the dismissal of an indictment on the grounds that the statute authorizing the charge is unconstitutional on its face or as applied. United States v. Fulcar, No. 23-cr-10052, 2023 WL 7116738, at *1 (D. Mass. Oct. 27, 2023) (denying motion to dismiss indictment for violation of 18 U.S.C. § 922(g)(1)); see also United States v. Carter, 752 F.3d 8, 12 (1st Cir. 2014) (considering a defendant's motion to dismiss an indictment raising a constitutional challenge under 18 U.S.C. § 922(g)(9)).  To succeed on a facial challenge, the moving party must demonstrate "that the statute lacks any 'plainly legitimate sweep.'" Hightower v. City of Boston, 693 F.3d 61, 77–78 (1st Cir. 2012) (quoting United States v. Stevens, 559 U.S. 460, 472 (2010)).  For an as-applied challenge, the defendant must show that the statute is unconstitutional as it has been applied to the circumstances of his case.  See id. at 71–72.

## III.  DISCUSSION

The Supreme Court has held that the Second and Fourteenth Amendments protect an individual's right to keep and bear arms. District of Columbia v. Heller, 554 U.S. 570, 580–81 (2008); McDonald v. City of Chicago, 561 U.S. 742, 749–50 (2010).  In Heller, the Supreme Court considered whether certain restrictions on the possession of firearms in a home were constitutional.  554 U.S at 574–76.  The Court found that the Second Amendment "guarantee[s]

the individual right to possess and carry weapons in case of confrontation," id. at 592, but cautioned that "the right secured by the Second Amendment is not unlimited," id. at 626. Specifically, the Court explained that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." Id. at 626–27.

Two years later, in McDonald, the Supreme Court considered whether its holding in Heller, which until that point had extended only to the federal government, applied to state laws. McDonald, 561 U.S. at 767.  The Court found that it did, reasoning that "the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in Heller." Id. at 791.  Moreover, the Court reaffirmed that an individual's Second Amendment right to bear arms is not a universal one, reiterating, "[w]e made it clear in Heller that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons . . . .'" Id. at 786 (quoting Heller, 544 U.S. at 626–27).

Most recently, in Bruen, the Supreme Court found that New York's firearm licensing regulations, which limited licenses to carry firearms to those who could both demonstrate need and satisfy statutory criteria, ran afoul of the Second and Fourteenth Amendments' protection of an individual's right to carry a handgun for self-defense outside the home. 597 U.S. at 70–71.  In its decision, the Court set out a two-part framework for determining the constitutionality of a limitation on the right to bear arms. Id. at 17.  First, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." Id. Second, if the plain text covers the individual's conduct, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Id.

Here, Defendant argues that in light of Bruen, § 922(g)(1) is both facially unconstitutional and unconstitutional as applied to him.

### A.      Whether § 922(g)(1) Is Constitutional on its Face

As an initial matter, the Court in Bruen did not opine on the constitutionality of § 922(g)(1). Rather, the question before the Court was whether the New York firearms licensing regulation was constitutional. Bruen, 597 U.S. at 11.

Prior to Bruen, but after Heller and McDonald, the First Circuit rejected a constitutional challenge to § 922(g)(1). United States v. Torres-Rosario, 658 F.3d 110, 112–13 (1st Cir. 2011), cert. denied, 565 U.S. 1271 (2012). In Torres-Rosario, the First Circuit found that neither Heller nor McDonald "cast doubt on such longstanding regulatory measures as prohibition on the possession of firearms by felons." Torres-Rosario, 658 F.3d at 112–13 (quoting McDonald, 561 U.S. at 786).

"Until a court of appeals revokes a binding precedent, a district court within the circuit is hard put to ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority." Eulitt v. Me. Dep't of Educ., 386 F.3d 344, 349 (1st Cir. 2004), abrogated on other grounds by Carson v. Makin, 596 U.S. 767 (2022). Here, because Bruen did not address § 922(g)(1), supra, the Court finds that the constitutionality of § 922(g)(1) was not "unmistakably . . . cast into disrepute by" Bruen, see Eulitt, 386 F.3d at 349, and thus declines to depart from the First Circuit's ruling in Torres-Rosario. See Fulcar, 2023 WL 7116738, at *4 (collecting District of Massachusetts cases "conclud[ing] that Torres-Rosario remains controlling precedent and dispositive of constitutional challenges" to § 922(g)(1) after Bruen).

Even considering Bruen, though, § 922(g)(1) is constitutional on its face. First, the Second Amendment's text does not plainly cover Johnson's conduct. See Bruen, 597 U.S. at 17. The Second Amendment guarantees "the right of the people to keep and bear Arms." U.S.

4

Const. amend. II.  Johnson argues that the Second Amendment's reference to "the people" necessarily protects individuals who have been convicted of felonies, [Mot. at 9], claiming that "[j]ust as the text of the Second Amendment does not 'draw a home/public distinction with respect to the right to keep and bear arms,' it also does not draw a distinction between felons and non-felons."  Id. (quoting Bruen, 597 U.S. at 32).  The Supreme Court in Bruen, however, repeatedly used the phrase "law-abiding citizens" to refer to those who hold the Second Amendment right.  See 597 U.S. at 9, 15, 26, 29–31, 33 n.8, 38 & n.9, 60, 70–71.  Although the Supreme Court did not elaborate upon the implications of its repeated use of the qualifier "law-abiding citizens" in its discussion concerning the reach of Heller, McDonald, and Bruen, it seems clear that the distinction was meant to differentiate convicted felons from "law-abiding citizens."  See Fulcar, 2023 WL 7116738 at *4–5 (citing United States v. Giambro, No. 22-cr-00044, 2023 WL 3727673, at *3 (D. Me. May 30, 2023) ("Defendant is not an ordinary law-abiding citizen but rather a convicted felon.")).  Accordingly, the Court finds that the Second Amendment's text does not plainly cover Johnson's conduct.[1]

Second, the Government has met its burden under the second step of Bruen to show that § 922(g)(1) "is consistent with the Nation's historical tradition of firearm regulation."  Bruen,

---

[1] This finding is further supported by the concurrences and the dissent in Bruen, which indicate that the majority of the Court supports maintaining the status quo with respect to the constitutionality of felon in possession laws like § 922(g)(1).  See, e.g., Bruen, 597 U.S. at 72 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. . . .  Nor have we disturbed anything that we said in Heller or McDonald . . . about restrictions that may be imposed on the possession or carrying of guns."); id. at 81 (Kavanaugh, J., joined by Roberts, C.J., concurring) (reiterating Heller and McDonald's clarification that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ."); id. at 129 (Breyer, J. joined by Kagan and Sotomayor, JJ., dissenting) (agreeing with Kavanaugh, J. that the majority opinion had no bearing or effect on Heller's holding as to the presumptive lawfulness of felon disarmament laws).

597 U.S. at 24.  Under the Bruen test, the government must only "identify a well-established and representative historical *analogue*, not a historical *twin*."  Id. at 30 (emphasis in original).  When reviewing the Government's historical justifications, the Court must "resolve *legal* questions" according "to the principle of party presentation," and not "historical questions in the abstract." Id. at 24 n.6 (emphasis in original).

    Here, the Government argues that § 922(g)(1) is consistent with "the nation's longstanding tradition of disarming unvirtuous or dangerous citizens."  [ECF No. 37 at 15]. Among other things, it cites to (1) "a 'highly influential' 'precursor' to the Second Amendment" that provided that "'the people have a right to bear arms for the defence of themselves and their own state . . . . and no law shall be passed for disarming the people or any of them, unless for crimes committed or real danger of public injury from individuals,'" [id. (quoting United States v. Skoien, 614 F.3d 638, 640 (7th Cir. 2010) (Sykes, J., dissenting) (referencing the Address and Reasons of Dissent of the Minority of the Convention of the State of Pennsylvania to Their Constituents)]; (2) historical scholarship agreeing "that the prohibition of possession of firearms by those deemed dangerous is supported by history," [id. at 16 (citing Carlton F.W. Larson, Four Exceptions in Search of a Theory: District of Columbia v. Heller and Judicial Ipse Dixit, 60 Hastings L.J. 1371, 1377 (2009) (citing historical examples, including from the Revolution, for the proposition that "any person viewed as potentially dangerous could be disarmed by the government without running afoul of the 'right to bear arms.'"))]; (3) that "the right to bear arms is analogous to civic rights that have historically been subject to forfeiture by individuals convicted of crimes, including the right to vote, . . . and the right to serve on a jury," [id. (citing Richardson v. Ramirez, 418 U.S. 24, 56 (1974) (right to vote); 28 U.S.C. § 1865(b)(5) (jury service)]; and (4) the fact that "[s]tatutes disarming persons considered a risk to society, such as

convicted felons, are well known to the American legal tradition, including colonial-era law disarming those who defamed acts of Congress, failed to swear allegiance to the state, or refused to defend the colonies," [id. at 17 (citing Folajtar v. Att'y Gen. of the U.S., 980 F.3d 897, 908 & n.11 (3d Cir. 2020) (reviewing colonial laws from Connecticut, Pennsylvania, and Massachusetts))].

Johnson, on the other hand, points to the relatively short lifespan of § 922(g)(1), the "present day version" of which "traces its origins to 1938, when Congress passed the Federal Firearms Act, which prohibited certain felons from receiving firearms," and to the fact that at the time it was enacted § 922(g)(1) "'covered only a few violent offenses' . . . such as murder, rape, kidnapping, and burglary." [Mot. at 13 (quoting Skoien, 614 F.3d at 640 (citing Federal Firearms Act. c. 850, § 2(f), 52 Stat. 1250, 1251 (1938)))]. He further argues that "it was not until 1961 that congress amended the statute to prohibit 'possession by *all* felons.'" [Id. (quoting Skoien, 614 F.3d at 640 (citing Pub. L. 87–342, 75 Stat. 757))]. He finally cites to the First Circuit's decision in United States v. Booker, 644 F.3d 12 (1st Cir. 2011), to indicate that "as the First Circuit has previously recognized, section 922(g)(1) 'is firmly rooted in the twentieth century.'" [Id. (quoting Booker, 644 F.3d at 24)].

As explained above, the Government need not produce a historical twin of § 922(g)(1) to meet its burden under Bruen. 597 U.S. at 30. Here, the Court finds that the Government has sufficiently shown "historical precursors" to § 922(g)(1) that are "analogous enough to pass constitutional muster." Fulcar, 2023 WL 7116738, at *6 (quoting Bruen, 597 U.S. at 30).

**B.     Whether § 922(g)(1) Is Unconstitutional as Applied to Johnson**

i.     Constitutionality Under Torres-Rosario

Having concluded that the First Circuit's holding in Torres-Rosario is not in conflict with Bruen, Johnson's as-applied challenge to § 922(g)(1) also falls short. In Torres-Rosario, the

7

First Circuit acknowledged the possibility of as-applied challenges to § 922(g)(1), but found that such cases would be limited to those in which the underlying felony is "so tame and technical as to be insufficient to justify the ban." 658 F.3d at 113. Here, Defendant's criminal history demonstrates a persistent disregard for firearm regulations that is not "tame and technical" given the dangers posed by firearms, particularly in the hands of someone who has shown a willingness to repeatedly violate the law. Moreover, the Court in Torres-Rosario noted that "[i]t is well-established that felons are more likely to commit violent crimes than are other law-abiding citizens." Id. (quoting United States v. Barton, 633 F. 3d 168, 175 (3d Cir. 2011)). Even assuming *arguendo* that the Supreme Court may in the future find that some felonies are too "tame and technical" to justify the ban, it seems unlikely that the conduct of this Defendant would fall within such an exception. See id. Thus, Defendant's as-applied challenge fails under Torres-Rosario.

    ii.  Constitutionality Under Bruen

  Defendant's as-applied challenge to § 922(g)(1) also fails under Bruen. Defendant relies on several decisions finding that, in light of Bruen, § 922(g)(1) is unconstitutional as applied. [Mot. at 2, 10 (first citing Range v. Att'y Gen. of the U.S., 69 F.4th 96 (3d Cir. 2023), petition for cert. filed, No. 23-374 (U.S. Oct. 5, 2023); and then citing United States v. Bullock, No. 18-cr-00165, 2023 WL 4232309 (S.D. Miss. June 28, 2023), appeal filed, No. 23-60408 (5th Cir. July 28, 2023))]. Though the Court acknowledges that some courts around the country have reached different results, Defendant's cited cases are not binding here, and, as discussed supra, First Circuit precedent supports finding that Johnson's offenses are not "tame and technical." See Torres-Rosario, 658 F.3d at 113. Moreover, the cases to which Mr. Johnson cites are distinguishable, [Mot. at 2], as none concerns a felon who has repeatedly violated firearms laws. See Range, 69 F.4th at 98, 106 (previously convicted for making a false statement to obtain food

8

stamps in violation of Pennsylvania law); Bullock, 2023 WL 4232309, at *2 (previously convicted for aggravated assault and manslaughter in connection with a bar fight); United States v. Quailes, No. 21-cr-00176, 2023 WL 5401733, at *1 (M.D. Pa. Aug. 22, 2023) (prior drug-related convictions), appeal filed, No. 23-2533 (3d Cir. Aug. 24, 2023); United States v. Forbis, No. 23-cr-00133, 2023 WL 5971142, at *1 (N.D. Okla. Aug. 17, 2023) (drug possession and driving under the influence convictions); United States v. Harper, No. 21-cr-00236, 2023 WL 5672311, at *1 (M.D. Pa. Sept. 1, 2023) (prior convictions for armed robberies and drug trafficking, without indication of whether they were firearms-related), appeal filed, No. 23-2604 (3d Cir. Sep. 6, 2023).  Finally, to the extent that these cases involved prior violent crimes that are not tame and technical in nature or are otherwise not distinguishable, the Court disagrees with the holdings as a matter of law.  Thus, Mr. Johnson's as-applied challenge to § 922(g)(1) also fails.

## IV.     CONCLUSION

Accordingly, for the reasons set forth above, the Court DENIES Johnson's motion to dismiss.  [ECF No. 36].

**SO ORDERED.**

January 18, 2024                                          /s/ *Allison D. Burroughs*
                                                          ALLISON D. BURROUGHS
                                                          U.S. DISTRICT JUDGE